MARY C. BOLAND, Plaintiff, *v.* CITY OF NIAGARA FALLS, NEW YORK, Defendant.

Supreme Court, Niagara County, February 27, 1942.

*Hunt & Giles*, for the plaintiff.

*Clarence W. Greenwald, Corporation Counsel*, for the defendant.

HORTON, Official Referee.   Plaintiff brings this action as assignee of the Griffin Estates, Inc., against the defendant as successor to the village of LaSalle, N. Y.   Plaintiff seeks to recover the sum of $1,570 upon an agreement made by the plaintiff's assignor and the board of water commissioners of the village of LaSalle, N. Y., on the 23d of May, 1917.

In 1916 plaintiff's assignor owned the entire block of lots upon the east side of what is now Ninety-second street and the west side of Ninety-third street in the city of Niagara Falls.   At the time of the transaction hereinafter referred to, the property in question was in the village of LaSalle which was merged with the city of Niagara Falls on June 1, 1927, pursuant to an act of the

Legislature which provided that the city of Niagara Falls was to assume all outstanding obligations of the village. (See Laws of 1927, chap. 530, §§ 11, 16; Niagara Falls Charter [Laws of 1916, chap. 530], art. 16, § 400, as added by Laws of 1927, chap. 530, § 13.)

In 1916 and 1917 Griffin Estates, Inc., requested the village board of the village of LaSalle to install a water main in the alley at the rear of its said lots. On May 23, 1917, the following resolution was adopted at a regular meeting of said board of water commissioners: " Properly moved and seconded that Mr. Ludlow's application for extension on Griffin Estates be granted providing for 6″ main between the southerly end of main as it now exists to the street known as Pierce Avenue, Mr. Ludlow to furnish money and the board of water commissioners to repay him when revenue reaches 15% of cost of such extension providing there are enough funds on hand. Carried."

The water main was duly installed and Griffin Estates, Inc., paid the village $1,570. Between that day and May 31, 1927, thirty-seven lots were sold by Griffin Estates, Inc., in the block and nineteen houses erected which used water from this main. On May 31, 1927 a special meeting of the board of water commissioners was held for the purpose of closing up its business. At this meeting the following resolution was adopted: " There being sufficient Revenue from the main laid by the Griffin Estates Inc. in 1916, to pay more than 15% of the construction cost, the Village Treasurer is authorized to make a refund to the Griffin Estates Inc. of $1570.00, subject to the Griffin Estates Inc. making a dedication of the alley in which this main is laid, to the Village or the City of Niagara Falls."

In the meantime Griffin Estates, Inc., had sold five lots to Martha A. Crittsinger and was not in position to comply with the condition attached to the resolution of May 31, 1927, of the board of water commissioners but on February 6, 1941, the plaintiff acquired title to said five lots and thereby became the owner of the entire alley and was in position to dedicate the same and comply with said resolution.

On February 19, 1941, plaintiff duly tendered and delivered to the city of Niagara Falls a formal dedication in writing of the alley and demanded payment of said sum of $1,570.

The defendant declines to pay said sum and sets up three defenses to her claim: *First*, that it was barred by the Statute of Limitations; *second*, that the village board did not have authority to make the agreement, and *third*, that there has been no proof that there were sufficient funds on hand available for the payment of said sum.

The Statute of Limitations, in my opinion, is not a defense to this action which must be deemed to be upon the original contract of 1917, as amended by the resolution of May 31, 1927, which sought to modify the original contract by imposing an additional term. The plaintiff accepted this additional term upon February 19, 1941, and the cause of action, therefore, did not accrue until that date.

By section 224 of the Village Law a third class village was limited by the amendment of chapter 557 of the Laws of 1913 to the sum of $1,000 in any one year for the expense of extending water mains, which provided that the expenditure of a larger sum could be authorized only by a proposition adopted at an election. By section 40 of the Village Law a third class village is defined as one with a population of from 1,000 to 3,000 persons. There is no question that the village of LaSalle was a third class village at the time of the adoption of the resolution of 1917 and that such resolution was without statutory authority, at least as to the amount in excess of $1,000. This limitation, however, was removed by chapter 718 of the Laws of 1926, which provided that the water board may " extend the mains or distributing pipes within the village, if it has funds on hand which it may use for that purpose." At the time, therefore, that the village water board adopted its resolution of May 31, 1927, it was limited only by the provision that it must have had funds on hand which could be used for the purpose of extension of water mains. No evidence appears as to the amount of funds on hand when this resolution was adopted except the reference in the resolution to more than fifteen per cent of the construction cost. The necessity for such evidence, however, is removed by the presumption of legality of official acts.

" There is always a presumption that official acts or duties have been properly performed, and in general it is to be presumed that everything done by an officer in connection with the performance of an official act in the line of his duty was legally done." (22 C. J. § 69, p. 130.)

Some reference has been made to section 63 of the Village Law which provides that boards shall perform their duties subject to the approval of the board of trustees and to the fact that the board of trustees never approved the resolution of May 31, 1927, of the water board. This provision, however, has no bearing upon the situation here as it was made a part of the statute by chapter 650 of the Laws of 1927 and did not take effect until July first of that year.

Under these circumstances, I am constrained to find that the water board of the village of LaSalle had authority at the time it

passed the second resolution above referred to and that it created a binding obligation on the part of the village at that time and was one of the obligations assumed by the city of Niagara Falls.

Upon all the evidence in the case, I cannot agree with the arguments of defendant's counsel, for it seems to me that so far as possible a municipal corporation should be bound by the same principles of honesty and fair dealing as obtain in transactions between individuals. This view is recognized by subdivision 5 of section 20 of the General City Law, which provides that a city may " pay or compromise claims equitably payable by the city, though not constituting obligations legally binding on it." Here the corporation has been receiving for nearly twenty-five years and will receive for many years in the future the revenues of the water system installed by plaintiff's assignor at its own expense in reliance upon the undertaking of the village authorities to reimburse said assignor for such expense when the returns from water sold reached a certain percentage of the cost. By the terms of its own resolution, the village water board stated that more than that percentage had been reached in 1927. The resolution of 1917 contained the proviso that payment should be made only if there were enough funds on hand. The resolution of 1927 should be read in connection with the earlier one and the presumption is that the funds were on hand at the time it was passed. Under these circumstances, equity and good conscience demand that the recipient of these benefits should pay for them when the duly constituted authorities contracted so to do. If it be said that the resolution of 1917 was *ultra vires* because of the $1,000 limitation, then there is the resolution of 1927 passed at a time when there was no limitation except that funds be on hand, and if it be said that the proof is insufficient that there were funds on hand in 1927 in spite of the presumption above referred to, then there remains the fact that the contract was not finally accepted until 1941 at which time the city of Niagara Falls, the defendant, was under compulsion by statute to pay the obligations of the village of LaSalle with no provision as to sufficiency of funds in any particular account, and in all this we are aided by the section of the General City Law above quoted and the well-established decisions of the courts of this State that even moral obligations can be recognized by the municipal authorities. (See *Matter of Shaddock* v. *Schwartz*, 128 Misc. 616, and cases there cited; affd., 246 N. Y. 288, revg. 220 App. Div. 470.) In this case, as in most cases, recognition of the legal and of the moral obligations involved leads to the same conclusion.

Judgment is directed in favor of the plaintiff against the defendant for the sum of $1,570, with interest from February 19, 1941.